UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HAMMER BRAND, LLC, d/b/a
WOLF BRAND SCOOTERS,

    Plaintiff,

v.                                      Case No. 8:23-cv-1272-KKM-NHA

VORO, INC., et al.,

    Defendants.

_____

## ORDER

Defendants Ningbo Kaabo Technology Co., Ltd., Voro, Inc., and Leitmotif Services, LLC d/b/a Fluidfreeride LLC[1] move for a stay pending appeal of a permanent injunction and an order cancelling Kaabo's "Wolf Warrior" mark's registration. Mot. to Stay (MTS) (Doc. 229). For the reasons below, that motion is denied.

### I.    BACKGROUND

The heart of this trademark case is a dispute between Hammer Brand, LLC, and Kaabo over the use of the word "Wolf" in connection with the sale of scooters. Hammer

---

[1] The defendants explain that Fluidfreeride, which is bankrupt, joins this motion "[o]ut of an abundance of caution" but believes that "the limited relief from the bankruptcy stay does not include enforcement of the injunction" as to it. Mot. to Stay (MTS) (Doc. 229) at 5 n.1 (citing (Doc. 209-1)). Because no party seeks enforcement of the injunction as to Fluidfreeride, I have no cause to decide whether the automatic stay, 11 U.S.C. § 362(a), would prohibit that relief.

has sold gas-powered, Vespa-like scooters under the brand "Wolf" since 2013. *See* (Doc. 174-1) ¶ 10; (Doc. 176-4) at 11; (Doc. 176-5) at 11. In early 2016, Hammer registered the "Wolf" mark in connection with the sale of motor scooters. (Doc. 173-1) at 1–2. Kaabo, a Chinese scooter company, entered the American market in 2022 and, until recently, sold electric scooters under the brands "Wolf Warrior" and "Wolf King." (Doc. 173) ¶¶ 12, 14; (Doc. 173-2) at 1.

After learning in early 2023 that someone was selling electric scooters using the word "Wolf," (Doc. 174-5) ¶¶ 5–6, Hammer investigated and eventually sued Voro, which distributed the scooters, Compl. (Doc. 1); Am. Compl. (Doc. 9). Hammer learned through this action that Kaabo was the source of the infringing scooters, and Hammer amended its complaint to target Kaabo. Third Am. Compl. (Doc. 59). After discovery, the parties cross-moved for summary judgment. (Docs. 174, 175, 182, 184.)

As relevant here, I granted summary judgment in favor of Hammer on its infringement claim and entered a permanent injunction prohibiting Kaabo, Voro, and Fluidfreeride from selling electric scooters using the word "Wolf."[2] Summ. J. Order (Doc.

---

[2] The Summary Judgment Order also denies Hammer's motion in part, grants Voro's motion in part and denies it in part, and denies Kaabo's and Fluidfreeride's motions. Summary Judgment Order at 40–42. Only the portion of the order granting Hammer's motion in part is relevant here.

214) at 40–42. I also cancelled Kaabo's registration of the "Wolf Warrior" mark. *Id.* at 42; *see* 15 U.S.C. 1119.[3]

Kaabo, Voro, and Fluidfreeride appealed the injunction. Notice of Appeal (Doc. 216); *see* 28 U.S.C. § 1292(a)(1). They now move for a stay of the injunction and the cancellation of the "Wolf Warrior" mark pending resolution of that appeal. MTS. Hammer opposes their motion. Resp. (Doc. 232).

## II. LEGAL STANDARD

When a party appeals an order granting an injunction, a district court may stay that injunction "for bond or other terms that secure the opposing party's rights." FED. R. CIV. P. 62(d). "A party must ordinarily move first in the district court" before seeking a stay from a court of appeals. FED. R. APP. P. 8(a)(1)(C). A stay of an injunction pending appeal is "a disfavored and extraordinary remedy." *United States v. O'Callaghan*, 805 F. Supp. 2d 1321, 1327 (M.D. Fla. 2011).

In exercising its discretion to stay a permanent injunction, a district court must consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the

---

[3] Hammer has twice moved for an order directing the defendants to show cause why they are not in contempt of the injunction, (Docs. 217, 226), which I have twice denied, (Docs. 223, 231).

proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018). "The first two factors of the traditional standard are the most critical." *Nken*, 556 U.S. at 434. "It is not enough that the chance of success on the merits be better than negligible. By the same token, simply showing some possibility of irreparable injury fails to satisfy the second factor." *Robinson v. Att'y Gen.*, 957 F.3d 1171, 1177 (11th Cir. 2020) (cleaned up) (quoting *Nken*, 556 U.S. at 434–35).

### III. ANALYSIS

The defendants fail to show that any of the traditional factors weigh in their favor. I therefore decline to exercise my discretion to grant them a stay as to the permanent injunction. I also decline to stay the cancellation order because the defendants have not appealed it—their Notice of Appeal says that they seek only "reversal of the issuance of the permanent injunction." Notice of Appeal at 1.

I address each of the traditional factors as they apply to the permanent injunction.

#### A. The Defendants Have Not Made a Strong Showing That They Are Likely to Succeed on the Merits

Trying to make a strong showing that they are likely to succeed on the merits, the defendants largely repeat arguments that I already rejected in adjudicating the parties' summary judgment papers. *Compare* Summ. J. Order at 7–27, *with* MTS at 8–24. I therefore conclude that the defendants have not made a strong showing that they are likely

4

to succeed largely for the reasons that I already expressed. *See* Summ. J. Order. Yet a couple of their arguments bear addressing.

The first is the defendants' repeated assertion that Hammer needed to "present **incontrovertible** evidence to win" at summary judgment. MTS at 21 (emphasis in the original). That statement misstates the standard, or at least obfuscates it.

In the case that the defendants principally cite on this point, the Eleventh Circuit explained that "all material facts have been 'incontrovertibly proved' " when "there are no genuine issues of material fact." *FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 959 (11th Cir.) (quoting *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123–24 (5th Cir. 1978)), *cert. denied*, 144 S. Ct. 103 (2023). The defendants seem to suggest "incontrovertibility" is something more than another way to phrase the ordinary summary judgment standard. For example, they say that the testimony of one of Hammer's dealers as to the sophistication of scooter purchasers is not "incontrovertible evidence" of their lack of sophistication. MTS at 23–24. Yet the question is not whether the evidence is "incontrovertible" in the abstract, but whether the record evidence permits multiple conclusions on the factual question of whether scooter purchasers are sophisticated. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). On the question of consumer sophistication, only one conclusion was reasonable because all the record evidence pointed one way and the defendants presented no evidence as to credibility or legal arguments as

to sufficiency. *See* Joint Opp. to Pl.'s Mot. for Summ. J. (Doc. 191) at 15 (arguing only that "customers are likely to be very discerning because gas and electric scooters are not only expensive, but they can vary greatly in price"). The defendants thus seem to set the bar for summary judgment too high.

The defendants also argue that I erred by concluding that questions asked of Hammer's general manager are not hearsay. MTS at 9–11. They contend that I misapplied *United States v. Rivera* because the out-of-court questions in that case were not offered for the truth of any matter, but rather to show their effect on the defendant, Elliot Rivera. *Id.* (citing 780 F.3d 1084, 1092 (11th Cir. 2015)). The defendants are mistaken.

The relevant part of *Rivera* involves a challenge to the admissibility of questions that a government informant asked Rivera during a murder-for-hire investigation. 780 F.3d at 1092. While the *Rivera* Court explained that the informant's questions "were important only to the extent they provided a context to assess [Rivera's] response," the opinion makes clear that the questions' non-assertive nature made them not hearsay. *Id.* ("The majority of [the informant's] statements are not hearsay because they are not 'assertive' in nature."); *id.* ("These questions . . . are simply incapable of being true or false and thus are not hearsay."). *Rivera* thus repeats and applies the uncontroversial proposition that if an utterance involves no "matter asserted," that utterance cannot be hearsay. FED. R. EVID. 801(c)(2); *see also, e.g., United States v. Cruz*, 805 F.2d 1464, 1477–78 (11th Cir. 1986); *Lubbock Feed Lots,*

6

*Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 261–62 (5th Cir. 1980);[4] 5 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 801.11 (2d ed. 2025) ("Courts have generally held that questions are not hearsay because they are not assertions."). Accordingly, the questions asked of Hammer's general manager are not hearsay.

For the reasons above and those expressed in the Summary Judgment Order, I conclude that the defendants have not made a strong showing that they are likely to succeed in their appeal.

### B. The Defendants Fail to Show That They Will Be Irreparably Harmed

Kaabo argues that it will suffer irreparable harm in the absence of a stay because (1) it will lose the goodwill associated with its "Wolf Warrior" and "Wolf King" brands through their disuse, (2) its business will decline so much that it will be unable to remain in the American market, and (3) the injunction is causing "rumors" to circulate about it. MTS at 24–27. These arguments do not carry the day.

Although no Eleventh Circuit decision is directly on point, there is a persuasive consensus in this district that a trademark infringer suffers no "legitimate harm," let alone irreparable harm, from an injunction that "prevent[s it only] from using marks which [it is]

---

[4] The Eleventh Circuit adopted as binding precedent all decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981. *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

not entitled to use." *Clayton v. Howard Johnson Franchise Sys., Inc.*, 730 F. Supp. 1553, 1561–62 (M.D. Fla. 1988); *see also, e.g.*, *7-Eleven, Inc. v. Kapoor Bros. Inc.*, 977 F. Supp. 2d 1211, 1227 (M.D. Fla. 2013); *Callaway Golf Co. v. Golf Clean, Inc.*, 915 F. Supp. 1206, 1215 (M.D. Fla. 1995); *Aspire Health Partners, Inc. v. Aspire MGT LLC*, No. 6:24-CV-1578-JSS-EJK, 2024 WL 5169936, at *14 (M.D. Fla. Dec. 19, 2024). Kaabo thus cannot show irreparable harm based on its inability to unlawfully use the word "Wolf" in connection with the sale of electric scooters.

As for the harm to Kaabo's business, Kaabo fails to show that its economic harm flows from the injunction. Kaabo claims that it has lost its relationships with two of its three principal American distributors—co-defendants Voro and Fluidfreeride—in the past months, MTS at 25–26, but its evidence does not tie the dissolution of those relationships to the injunction, *see* (Doc. 229-4) ¶¶ 5–6.[5] For its part, Hammer submits a statement from Voro that explains that Voro cut ties with Kaabo over trouble with scooter parts changing without notice, Kaabo's failure to honor its warranty, and other issues. (Doc. 232-2) at 1–4. Kaabo's evidence ties its dwindling sales to the loss of the distributors, but not

---

[5] In its brief, Kaabo claims that Fluidfreeride "has filed for bankruptcy as a result of this litigation." MTS at 25. Yet the declaration it cites in support of that claim says only that "Kaabo was also informed by [Fluidfreeride] about its bankruptcy proceeding and its plan to reorganize its business. Kaabo's future relationship with [Fluidfreeride] is not currently clear." (Doc. 229-4) ¶ 6. In any event, Fluidfreeride filed for bankruptcy almost two months before I entered the injunction. *Compare* (Doc. 205) (giving notice on November 11, 2024, that Fluidfreeride filed for bankruptcy on October 28, 2024), *with* Summ. J. Order (entering injunction on December 20, 2024).

8

directly to the injunction. *See* (Doc. 229-4) ¶ 8 ("As a result of the changes to Kaabo's U.S. distributors, Kaabo's sales have severely declined.").

Kaabo protests that its sales of its scooters through KaaboUSA, its American arm, fell from $764,386.50 in November 2024 to $360,402 in December 2024, the month in which the injunction issued. MTS at 25–26 (citing (Doc. 229-4) ¶¶ 11–12). Yet Kaabo's December sales were higher than its average monthly sales in 2024, which were around $287,000 per month. *See* (Doc. 229-4) ¶ 10. In any event, the injunction issued toward the end of the month and Kaabo did not come into full compliance until early January. *See* Order Denying Mot. for Order to Show Cause (Doc. 223) at 3 (citing (Doc. 221-1) ¶¶ 6, 9). Even if its economic woes are irreparable, Kaabo fails to show that the injunction is causing them.

As for the "rumors" caused by the injunction, the only one Kaabo identifies is "that Kaabo will exit the U.S. market." (Doc. 229-4) ¶ 14; *see* MTS at 27. Kaabo fails to explain why such a rumor is traceable to the injunction as opposed to its souring relationship with its distributors and resulting "severe[] decline[]" in American sales. (Doc. 229-4) ¶ 8

Of course, these irreparable harm arguments relate only to Kaabo. The defendants make no arguments that Voro or Fluidfreeride will be irreparably harmed in the absence of a stay, likely because they will not be. Voro has cut ties with Kaabo, *see* (Doc. 232-2), and Fluidfreeride is bankrupt, *see* (Doc. 232-3).

In sum, no defendant has shown that it will be irreparably harmed absent a stay of the injunction.

### C. The Balance of the Equities Tips in Favor of Hammer

As irreparable harm to Hammer is presumed, 15 U.S.C. § 1116(a), and no defendant shows that they will be irreparably harmed, the balance of the equities tips decisively in Hammer's favor.

### D. Denying a Stay is in the Public Interest

Finally, the public interest favors Hammer. The defendants argue that staying the injunction promotes the public interest by allowing "free and fair competition" rather than hampering their ability to compete. MTS at 27–28. But as Hammer points out, the public interest generally weighs in favor of enjoining trademark infringement. *See Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008) ("[T]he public deserves not to be led astray by the use of inevitably confusing marks—even in cases in which more than one entity has a legal right to use the mark."); Resp. at 9–10. Competition that relies on misappropriating a competitor's trademark can hardly be said to be "free and fair." Accordingly, I conclude that this factor weighs in Hammer's favor.

\* \* \*

For the reasons above, I conclude that all four traditional factors weigh in favor of denying a stay of the permanent injunction.

## IV. CONCLUSION

Accordingly, Defendants Ningbo Kaabo Technology Co., Ltd., Voro, Inc., and Leitmotif Services, LLC d/b/a Fluidfreeride LLC's Joint Motion to Stay (Doc. 229) pending appeal is **DENIED**.

**ORDERED** in Tampa, Florida, on February 24, 2025.

Kathryn Kimball Mizelle
United States District Judge